IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAYMOND CARTER #273-461           *
    Plaintiff

                      *

    v.                                       CIVIL ACTION NO. JKB-12-1084

                      *

WARDEN
DR. AVA JOUBERT                     *
    Defendants

****** 

## MEMORANDUM

Raymond Carter ("Carter"), a Maryland Division of Correction ("DOC") prisoner housed

at Western Correctional Institution ("WCI"), filed a civil rights complaint under 42 U.S.C.

§ 1983 against the Warden and Corizon Medical Services employee Dr. Ava Joubert ("Joubert").

Carter, who is self-represented, seeks money damages and transfer to another prison where he

could receive "appropriate" medical treatment. The Warden was dismissed from this action by

order dated May 7, 2012. Defendant Joubert, through counsel, has filed a motion for summary

judgment (ECF No. 17) which is unopposed.[1] A hearing is not necessary to resolve the pending

dispositive motion. *See* Local Rule 105.6 (D. Md. 2011).

### Background

Carter claims he was stabbed in the neck and back on December 15, 2011, while housed

at North Branch Correctional Institution ("NBCI"), and suffers medical problems as a result.

Carter alleges that as a result of these and other health problems, Dr. Ottey, who treated Carter at

NBCI, wrote orders on March 15, 2012, that Carter be given a bottom bunk, celled on a bottom

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on August 15, 2012, Carter was notified that Joubert had filed a dispositive motion, the granting of which could result in the dismissal of his action. ECF No. 18. Carter was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.* To date, Carter has failed to respond.

tier, housed in a "medical cell," and handcuffed in front. ECF No. 3 at 3.   Carter complains that when transferred from NBCI to WCI, he was "manhandled" by unidentified officers.[2]   He further claims that Joubert told him she would not honor Dr. Ottey's orders.   As a result, Carter is handcuffed from behind and has not received special housing consideration. *Id.*

Counsel provides medical records and an affidavit from Joubert outlining Carter's medical treatment and care.   Carter suffers from chronic joint pain of an unspecified nature.   ECF No. 17, Exhibit 1 at 3, 26.   Prior to transfer to WCI, Carter was involved in an altercation with a fellow NBCI prisoner on December 15, 2011, and received a small stab wound to the back that was cleaned and glued prior to his return to his housing unit.   Joubert Affidavit, Attachment 1 at ¶ 5.   A week later, Carter complained of back and neck pain to Dr. Ottey, and was told to continue his medications.   Dr. Ottey provided additional pain medication and a muscle relaxer, and ordered that Carter be "double-cuffed" in the back for one month.   Carter was told to avoid heavy lifting. *Id.,* ¶ 6.   In January of 2012, Carter continued to complain of back pain and requested additional muscle relaxers. *Id.,* ¶ 7.   Examination revealed no abnormalities in the back or spine and no muscle spasms, and renewal of the prescription was denied. *Id.*   When Carter returned to the medical unit on February 9, 2012 and continued to complain of neck, shoulder and back pain, the medication was provided despite the absence of clinical findings. *Id.,* ¶ 8.

Carter reportedly was involved in a second altercation with another inmate on February 16, 2012, and complained of elbow pain.   Physical examination revealed no swelling, redness, lacerations, bruises or other signs of distress. *Id.,* ¶ 9. On February 27, 2012, Carter requested more muscle relaxers and special orders regarding his handcuffing. *Id.*   His muscle relaxer prescription

---

[2] As specific officers are not named, this claim is not before this court and will not be addressed in connection with this case.

was renewed for one month on March 1, 2012, during a chronic care appointment, and Carter was informed that he would be required to follow up with a doctor regarding additional pain management. *Id.*, ¶ 10. On March 16, 2012, Dr. Ottey noted that Carter's knee and spine were tender. Carter was directed to follow up if his condition worsened or if there was no improvement in 30 days. Dr. Ottey also ordered a renewal of Plaintiff's bottom bunk status, bottom tier status, front cuffing with black box, and medical accessible cell. *Id.*, ¶ 11.

Carter was transferred to WCI ten days later, on March 26, 2012. *Id.*, ¶ 12. Dr. Joubert indicates that when handcuffing adjustments/extensions are medically indicated, it is the patient's level of security and the security policy of the particular facility that determine whether the inmate is front-cuffed with a black box or double-cuffed in the back. *Id.* On March 29, 2012, Joubert performed a chart review and ordered that Carter be double-cuffed in the back rather than front-cuffed with a black box, which was consistent with the security policy at WCI. *Id.* Joubert notes that both front-cuffing with a black box and double-cuffing in the back are methods of handcuffing used to increase or extend the length of the cuffs for inmates who cannot be adequately handcuffed with the typical security methods. *Id.*

Shortly after his arrival to WCI, Carter submitted sick call requests complaining of neck and back pain. He was seen by a medical provider on April 3, 2012. *Id.*, ¶ 13. During the visit, Carter reported a history of neck and back pain due to the December of 2011 stabbing incident, and indicated he felt he needed to be housed in a single cell. *Id.* Physical examination of Carter's back and spine revealed no abnormalities, no spasms and no tenderness, and he demonstrated no discomfort and had full lumbar flexion. *Id.* Carter's muscle relaxers were discontinued and the medical determination was also made that he did not present with indications for a single man cell. (*Id.*)

Joubert's first appointment with Carter was on April 11, 2012. *Id.*, ¶ 14. At that time, Joubert evaluated Carter's blood pressure problem and his generalized complaints of neck and back pain. *Id.*

Physical examination revealed a very small healed scar on Carter's cervical spine, but no tenderness or deformity. *Id.* Joubert directed that Carter follow up if his condition worsened or did not improve. *Id.* She also ordered a follow up appointment two weeks later so she could further review other documents regarding his prior injury. *Id.* Carter was subsequently seen by medical personnel on April 20 and April 23, 2012, for other medical issues, and did not report back or neck pain during either appointment. *Id.*, ¶ 15.

Joubert next met with Carter on April 25, 2012, to follow up regarding his complaints of chronic pain in his knee, as well as neck and back pain from the altercation in December 2011. *Id.*, ¶ 16. Joubert observed some muscle spasms and tenderness. *Id.* Plaintiff reported he could not raise his legs or bend forward and could barely move; however, Joubert observed that Carter walked into the examination room without difficulty. *Id.* Based on her examination, Joubert instructed Carter to perform back exercises and to follow the back pain worksheet. *Id.* Joubert also ordered x-rays of Carter's spine and knees in order to further assess his complaints, and directed Carter to follow up if his condition worsened or did not improve within three days. *Id.* X-rays of the spine and knees, taken on April 25, 2012, revealed no acute disease, no dislocation, no acute fracture and no subluxation. *Id.*, ¶ 17.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

4

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## A.      Eighth Amendment Standard

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).    To state an Eighth Amendment claim for denial of medical care, Carter must demonstrate that Joubert's actions (or her failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, Carter was suffering from a serious medical need and that, subjectively, Joubert was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.  The second component of proof requires "subjective recklessness" in the face of the serious medical condition.  *Farmer*, 511 U.S. at 839– 40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"  *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), (quoting *Farmer,* 511 U.S. at 844).   If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."  *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).  Further, disagreements between a prisoner and health care staff over the prisoner's proper care do not state a § 1983 claim unless exceptional circumstances are alleged. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

It appears from the uncontroverted record and Joubert's uncontroverted affidavit that Carter was provided appropriate care. Medical record evidence does not suggest that Carter discussed any issues with regard to his accommodation orders for bottom bunk, bottom tier or medical accessible cell following his transfer to WCI. *Id.*, ¶ 18. Joubert did not cancel or refuse to honor any orders issued by Dr. Ottey for Carter's accommodations, with the exception of

discontinuing his order for front-cuffing with a black box and ordering double-cuffing in the back instead. *Id.*, ¶ 19.  Joubert did not discontinue any order for Carter to receive a bottom bunk, bottom tier or a medical accessible cell. *Id.*

Joubert did not deny Plaintiff medical treatment for any medical concerns or symptoms nor did she ignore or disregard any of his medical needs. *Id.*, ¶ 20. Instead, she examined him, evaluated his subjective complaints along with her objective observations and ordered further testing to better assess his complaints. *Id.*  Joubert did not order any additional special accommodations for Carter because she did not find any to be medically indicated. *Id.*, ¶ 21.

Joubert has not been deliberately indifferent to Carter's medical needs.  An Eighth Amendment violation is not found on the facts set forth in this case.  Accordingly, Joubert shall be granted summary judgment by way of a separate Order.

DATED this _____3_____ day of October, 2012.

BY THE COURT:

James K. Bredar
United States District Judge